[Civ. No. 2459. Fourth Appellate District.—December 4, 1939.]

NADA HOWES, Appellant, v. OWEN J. REEVES et al., Respondents.

Drumm, Tucker & Drumm and Fred D. Johnston for Appellant.

Hahn & Hahn and Allyn H. Barber for Respondents.

BARNARD, P. J.—The plaintiff brought this action to quiet her title in and to certain cabins located on two cabin sites in a national forest, including the furniture in the cabins. The named defendants filed separate answers denying the plaintiff's ownership of the property in question and asserting ownership in themselves, respectively. The court found in favor of the defendants and entered judgment that defendant Reeves is the Permittee-lessee of one of the lots in question and the owner and entitled to the possession of the cabins, improvements, and furniture thereon, and that the defendant Howes is the Permittee-lessee of the other lot and the owner and entitled to the possession of the cabins, improvements and furniture situated thereon. From this judgment the plaintiff has appealed.

█ The question presented is whether the evidence supports the findings that the appellant is not the owner of the articles in question and that the respective respondents are the owners thereof. The question of ownership depends upon whether these articles were or were not owned by one Edgar H. Howes at the time of his death in 1935. The appellant is his widow and it is not disputed that she has succeeded to such rights in the property as he possessed at the time of his death. The respondent, Edgar T. Howes, is a son of Edgar H. Howes and, for convenience, we will refer to the latter as Mr. Howes.

The cabin sites, on which the property here in question is situated, are known as lots 231 and 233 of a certain tract in the San Bernardino mountains, a part of a national forest. Prior to 1916, Mr. Howes leased from the forest service a cabin site in this tract known as lot 232, under a written permit calling for an annual rental of $15. On this lot he erected what is referred to as the "large cabin", with other improvements. In 1916, he leased under a similar permit lot 233 in this tract, on which he erected two smaller cabins. For some years he maintained the cabins on both lots as a mountain home for the joint use of all of his family, including his son, one of the respondents here. In 1926, he married the appellant, who is his second wife. A month or two later, his son Edgar T. Howes also married and went east on his honeymoon. A month later the forest service wrote to Mr. Howes advising him that under its rules allowing only one site to a permittee and his family he could not hold both lots 232 and 233, that it would be necessary to cancel the permit for one of the lots, asking him to advise them "which one you will give up" and telling him there was nothing to prevent a relative "outside of your immediate family taking the other lot". He replied asking them to have the lease for lot 233 "put in name of " Edgar T. Howes. A new permit or lease for lot 233 was issued in the name of Edgar T. Howes and it remained in his name until 1937 when, at his request, a permit was issued to his brother-in-law, the respondent Reeves. In 1927 a third cabin was built on lot 233 by Mr. Howes. All three cabins on that lot were one-room cabins, used for sleeping purposes.

In 1930 one Skiles, who held a lease to lot 231 in this tract, relinquished his lease. Mr. Howes paid him $1200 for his cabin, which was located on that lot. A new lease for the lot was issued to a sister-in-law of Mr. Howes and a bill of sale to the cabin was issued to the sister-in-law but delivered to Mr. Howes. The sister-in-law paid nothing for this transfer. The permit for this lot stood in the name of the sister-in-law until 1932 or 1933 when it was transferred to a sister of Mr. Howes. After the death of Mr. Howes, in 1935, this sister caused the permit or lease to lot 231 to be transferred to the name of the respondent Edgar T. Howes. Up to the death of Mr. Howes the cabins on all three lots continued to

be used by various members of the Howes family and their guests.

The permit or lease for these lots provided that any buildings placed thereon might be removed by the lessee within a reasonable time after the expiration or revocation of the lease. One of the officials of the forest service testified that under their rules such buildings were to be removed within sixty or ninety days. Relying on this removal privilege the appellant argues that these cabins and improvements constituted personal property which did not pass to a new lessee of the land, that there is not sufficient evidence to show that Mr. Howes made a gift of this personal property to his son in the one case and to his sister-in-law in the other case, and that these new lessees were in fact holding the new leases and the cabins on the lots in trust for Mr. Howes. According to appellant's theory Mr. Howes put these lots in the name of others with a secret understanding that they were to be held for him and he continued to be the real lessee or permittee, and continued to be the owner of the personal property which remained thereon. In other words, this theory is based upon the fact that he was violating the rules of the forest service and working a fraud on the government, and she now asks a court of equity to declare that some sort of an equitable trust existed in order that this fraud may be perpetuated and its ends carried out.

While the appellant relies on the forest service rules, and the terms of the leases and permits, to show that the cabins were personal property, they entirely ignore the provision that any such improvements must be removed within a reasonable time after expiration of the lease. Aside from the fraud which alone can support the appellant's theory the buildings on lot 233 were not removed within a reasonable time after Mr. Howes gave that lot up and had not been removed at the time of his death nearly ten years later. It would have been equally illegal for Mr. Howes to have acquired a lease to lot 231 in 1930, since he still retained lot 232 and continued to retain it until his death. If he at one time had a right to remove the buildings therefrom that right was not exercised within a reasonable time after the lease was terminated by the lessee who had put the buildings on that lot. Without going further into the matter it must be held, under familiar equitable rules, that at the time of his

death Mr. Howes was not the owner of any interest in the cabins. and improvements here in controversy and the court correctly so found.

Moreover, we think there is sufficient evidence to support the findings that the respondents are the owners of the cabins in dispute. They are the present holders of the leases or permits, which provide for their right to remove the improvements. The respondents rely on such facts as that Mr. Howes continued to use all of the cabins, that he paid the taxes on the cabins and for the rental of the land during his lifetime, and that he paid for the construction of another cabin on lot 233. On the other hand, there is evidence that Mr. Howes made no attempt to dispose of the property in question by will. He gave all of his property to his then wife, his will stating that he made no provision for his son, one of the respondents here, for the reason that he had made other provision for him during his lifetime. Shortly before his death he told an intimate friend that he had divided up his property and had given the little cabins to his son and the "big cabin" to his wife. The son testified that from 1926 on he considered that the improvements on lot 233 belonged to him and there is evidence that Mr. Howes' sister-in-law had, at one time during the lifetime of Mr. Howes, claimed the right to convey lot 231 to others. Mr. Howes intentionally left improvements on these lots which he knew he could not hold for himself, and caused the lots to be leased to his relatives. The inference may reasonably be drawn that he intended to comply with the rules of the forest service and intended to give these improvements to these relatives, believing that they could and would continue to be available, as they had been, for the common benefit of the entire family. They were so used in connection with his own lot and there was no occasion for any member of the family to assert his rights or make any demands for exclusive possession. There is no evidence that Mr. Howes made any claim of ownership to any of the property in question after 1936. If a presumption is to be indulged in it should be in favor of an intended gift rather than an intended fraud. There is some evidence indicating a gift which, under the circumstances, may be presumed to apply also to the furniture in the cabins and we think this evidence, with the reasonable inferences there-

from, is sufficient to support the finding of ownership in respondents as against any rights of the appellant.

The judgment is affirmed.

Marks, J., and Griffin, J., concurred.